IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEOFFREY L. BURTCH, ET AL. : | |
| : | CIVIL ACTION |
| v. : | NO. 07-2759 |
| : | |
| JONATHAN GANZ, : | |
| PINCUS, VERLIN, HAHN & : | |
| REICH, P.C., ET AL. : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              APRIL 21, 2009

Jeoffrey L. Burtch ("Plaintiff-Appellant") brought this appeal from the Bankruptcy Court on behalf of Mushroom Transportation Company, Inc. ("MTC") to recover funds misappropriated by MTC counsel Jonathan Ganz ("Ganz") while MTC was in Chapter 11 bankruptcy. Specifically, Plaintiff-Appellant contends that: (1) Ganz's former law firm, Pincus, Verlin, Hahn & Reich, P.C. ("PVHR") is liable for turnover of MTC's assets that they held in escrow; (2) MTC officers Michael C. Arnold ("Arnold") and Robert B. Cutaiar ("Cutaiar") owed no fiduciary duty to protect MTC's assets and did exercise due diligence in uncovering Ganz's defalcation; and (3) Arnold and Cutaiar are entitled to a tolling of the statute of limitations for their breach of fiduciary duty and breach of contract claims against PVHR. After a five day trial, the Bankruptcy Court determined that PVHR was not responsible for turnover, that Arnold and Cutaiar had a fiduciary duty to protect MTC's assets and did not

exercise due diligence, and that the statute of limitations was not tolled.

For the reasons that follow, the findings of the Bankruptcy Court are affirmed.

I.   BACKGROUND

   A.   Facts

This appeal arises from an adversary action brought by MTC Chapter 7 bankruptcy trustee, Michael C. Arnold, to recover funds embezzled by MTC's bankruptcy counsel, Jonathan Ganz.[1] MTC, through two adversary actions, sought to hold Ganz and several other defendants liable for the consequences of Ganz's embezzlement.

On June 24, 1985, MTC and its affiliates filed for protection under Chapter 11.  MTC became debtor-in-possession and remained so until the bankruptcy was converted to a Chapter 7 proceeding in December 1990.  MTC, through PVHR, engaged Ganz's services to provide legal representation during the course of the bankruptcy proceeding.  All of the events relevant to this action occurred during MTC's Chapter 11 bankruptcy.

On February 27, 1986, the Bankruptcy Court appointed

---

[1] For purposes of this opinion, the historical facts here have been adapted from the Third Circuit's decision in In re Mushroom Transp. Co., Inc., 382 F.3d 325, 331-33 (3d Cir. 2004).

Arnold "Special Liquidation Consultant" to assist in MTC's liquidation of assets. On June 16, 1986, the Bankruptcy Court authorized the opening of an escrow account at Continental Bank ("Continental"), a secured creditor to which MTC owed a substantial debt, in order to hold MTC's liquidation proceeds.

On February 12, 1987, Arnold wrote a letter to Ganz, inquiring into MTC's assets and informing him that he (Arnold) and Cutaiar, MTC's president, were handling MTC's day-to-day operations, but that Arnold anticipated a "further reduction" in his (Arnold's) involvement in the bankruptcy activities after March 1987. Ganz responded in writing on February 17, 1987, indicating that Continental still held $986,000 in various escrow accounts and that PVHR also held some funds for any MTC final real estate settlements.

In June 1987, Continental and PVHR, as MTC counsel, entered into a Bankruptcy Court-approved stipulation (the "Stipulation"), which provided that once MTC satisfied its debt to Continental, any remaining funds left in the Continental escrow account would be turned over to PVHR.

On July 21, 1987, after MTC's debt to Continental was paid in full, Continental transferred the remaining funds directly to Ganz, depositing them in an escrow account at Continental under MTC's name, with Ganz as escrow agent for MTC.

Between August 3, 1987, and April 26, 1988, Ganz

3

misappropriated over $500,000 of MTC's funds. On February 2, 1988, Ganz wrote a note to Arnold, which enclosed a copy of the Stipulation. On February 10, 1988 Arnold responded, requesting additional information, but not questioning the Stipulation. Ganz failed to respond to this letter in writing but spoke to Arnold about it sometime after November 1988. During this time, it is undisputed that Arnold did not seek from Ganz any further information regarding MTC's financial status, nor did he request written confirmation regarding the amount and location of MTC's funds.

By January 1992, MTC had converted to Chapter 7 bankruptcy and Arnold had been elected Chapter 7 trustee. At this point, Arnold contacted Ganz requesting that he start liquidating the MTC escrow accounts, but received no response. In February 1992, the United States Trustee informed Arnold that Ganz had been involved in the defalcation of other bankruptcy funds for which he was counsel, and Arnold learned Ganz had embezzled MTC's funds.

On October 5, 1992, Arnold commenced this adversary proceeding. Jeoffrey Burtch has since been appointed successor to Arnold as MTC trustee and continues as Plaintiff-Appellant in this proceeding.

B.   Procedural History

On October 5, 1992, Arnold filed the instant adversary action (Adversary No. 92-1043) against several entities, including Ganz, PVHR, PVHR's individual shareholders, and Continental, to recover the embezzled funds. Arnold filed a second adversary action (Adversary No. 94-003) against a separate set of defendants that the Bankruptcy Court refused to allow him to join in the original action. In two separate opinions on August 24, 1998 and October 1, 1999, the Bankruptcy Court granted summary judgment on the breach of contract and breach of fiduciary duty issues in favor of all defendants, finding that the applicable statute of limitations barred Arnold's claim because he failed to exercise due diligence.

On September 4, 2002, this Court affirmed the Bankruptcy Court's ruling on essentially the same grounds. See In re Mushroom Transp. Co., Inc., 282 B.R. 805 (E.D. Pa. 2002). Arnold appealed and the Third Circuit heard argument on May 27, 2004. On August 24, 2004, the Third Circuit reversed the grant of summary judgment and remanded the case back through the District Court to the Bankruptcy Court with instructions that the determination of reasonable diligence is a question for the fact finder, rather than a determination as a matter of law. See In re Mushroom Transp. Co., Inc., 382 F.3d 325 (3d Cir. 2004).

On May 3, 2007, after a five day trial including

5

witness testimony and presentation of evidence, Judge Fox in the Bankruptcy Court issued a lengthy opinion finding that as a matter of fact, Arnold and Cutaiar failed to exercise reasonable diligence in determining Ganz's defalcation. Therefore, Arnold's claim was barred by the statute of limitations on all counts. See In re Mushroom Transp. Co., Inc., 366 B.R. 414 (E.D. Pa. 2007). That decision was appealed, and now stands again before this Court.

II.  JURISDICTION AND STANDARD OF REVIEW

In bankruptcy cases, the district court sits as an appellate court and has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). See In re Sheckard, 394 B.R. 56, 61 (E.D. Pa. 2008); In re Top Grade Sausage, Inc., 227 F.3d 123, 125 (3d Cir. 2000). In reviewing the Bankruptcy Court's judgment on appeal, the district court reviews legal determinations de novo, findings of fact for clear error, and exercises of discretion for abuse thereof. In re United Health Care Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005) (citing In re Transworld Airlines, Inc., 145 F.3d 124, 130-31 (3d Cir. 1998)); see also Fed. R. Bankr. P. 8013.

For mixed questions of law and fact, the court "exercise[s] plenary review of the legal standard applied by the . . . [B]ankruptcy [C]ourt[], but review[s] the [Bankruptcy] [C]ourt's findings of fact on a clearly erroneous standard." In

re Abbotts Diaries of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986) (citing Universal Minerals v. C.A. Hughes & Co., 669 F.2d 98, 103 (3d Cir. 1981)). "A factual finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re CellNet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

III. DISCUSSION

Plaintiff-Appellant appeals the decision of the Bankruptcy Court and argues that: (1) PVHR had possession of MTC's assets and is responsible for turnover; (2) Arnold and Cutaiar owed no fiduciary duty to protect MTC's assets and did exercise due diligence in uncovering Ganz's defalcation; and (3) Arnold and Cutaiar's breach of fiduciary duty and breach of contract claims against PVHR are not barred by the statute of limitations because the applicable statutes were tolled.

    A.   <u>PVHR Never Had Possession, Custody, or Control of MTC's Assets and Is Not Responsible for Turnover</u>

The question of whether PVHR is responsible for turnover was determined by the Bankruptcy Court as a matter of both fact and law and is reviewed under the clearly erroneous standard for factual findings and plenary review for legal

conclusions.

Claims for turnover in bankruptcy proceedings, where the entity is not a custodian as defined by 11 U.S.C. § 101(11), are governed by 11 U.S.C. § 542(a). Section 542(a) requires that an entity other than a custodian in "possession, custody, or control . . . of property that the trustee may use . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

Judge Fox determined that PVHR was not subject to turnover pursuant to 11 U.S.C. § 542(a) because PVHR was never in "possession, custody, or control" of MTC's assets. Judge Fox examined evidence that included, <u>inter alia</u>: (1) the audit of PVHR's escrow accounts, which indicated no discrepancies for MTC's escrow account; (2) bank account reconstructions performed by the United States Trustee; and (3) exhibits outlining exact money amounts and checks drawn and deposited for MTC's escrow account at PVHR, indicating these transactions were for legitimate MTC-related business such as MTC "fees & costs." <u>In re Mushroom Transp. Co., Inc.</u>, 366 B.R. at 424-25 (citing exhibits P-132, P-141, P-179, P-182). Judge Fox determined that although PVHR represented MTC in their Chapter 11 bankruptcy and established an escrow account with MTC's assets, the contents of

which were used to pay part of Continental's claim and other professional expenses, this evidence "demonstrates the likelihood that the [MTC] funds misappropriated by Ganz were never channeled through the law firm escrow account, but were transferred directly by Continental Bank to bank accounts titled in Ganz's name alone." Id. at 439.[2] Furthermore, the evidence admitted at trial indicated that the estate funds held in the PVHR escrow account were transferred legitimately to Continental and properly used for administrative expenses. Id. at 440, n.24.

Because after review of the entire record, the Court is not left with a definite and firm conviction that a mistake has been made in determining these factual findings, the Bankruptcy Court's conclusions are affirmed.[3] In light of the affirmation

---

[2] There were two separate escrow accounts at issue here: (1) the Continental escrow account, and (2) the PVHR escrow account. The Continental escrow account contained the funds which Ganz misappropriated. There is no evidence any funds held in the PVHR escrow account were used inappropriately by Ganz.

[3] Plaintiff-Appellant also argues that by virtue of Ganz being a partner at the firm, PVHR had constructive possession of MTC's assets and therefore is required to turnover the funds misappropriated by Ganz. In denying this motion for recovery, Judge Fox relied on the Supreme Court's decision in Maggio v. Zeitz, 333 U.S. 56 (1948). Maggio found that a claim for turnover is "in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation, or improvident dissipation of assets." 333 U.S. at 63. Judge Fox found the reasoning in Maggio applicable here, and this Court agrees. While PVHR (and its partners individually) were liable for Ganz's tortious actions, PVHR cannot be ordered to return assets over which it never had "possession, custody, or control."

The same result was obtained in Matter of Pinckard's

that PVHR was never in "possession, custody, or control" of MTC's assets, the Bankruptcy Court's legal conclusion that PVHR has no legal obligation to turnover these assets is affirmed.

---

Estate, 417 N.E.2d 1360 (Ill. App. Ct. 1980), a case decided under Illinois law but which asserted the same theory of recovery pressed here by the trustee under similar facts. There, an attorney in a firm (which held itself out as a partnership), received stocks and money from a client in the form of a check made out to the partnership. These assets belonged to a bankrupt estate. The attorney deposited these assets in a partnership bank account to which only the lawyer who deposited funds (but not the other partners) had access. Thereafter, the attorney who had access to the account misappropriated the funds. The trial court found that the other partners were liable for turnover of the estate assets misappropriated by the rogue partner and held them in contempt for failure to turnover the assets. The appellate court reversed, finding that "even though [the firm partners] may be liable for [the rogue partner's] wrongful withholding of the alleged assets, this did not show that the [firm partners] ever had possession or control of the estate assets . . . ." Pinckard's Estate, 417 N.E.2d at 1366. Therefore, turnover was not appropriate.

  As re-emphasized in Maggio and Pinckard, the sine qua non of a turnover action is "possession, custody, or control" of assets of the estate by the person against whom turnover is demanded. Since, as a fact, Judge Fox found that PVHR never had "possession, custody, or control" of the estate funds misappropriated by Ganz, PVHR cannot be held liable for turnover under the theory that PVHR is liable for the tortious conduct of Ganz.
  Plaintiff-Appellant relies on In re Summit Airlines, Inc., 160 B.R. 911 (E.D. Pa. 1993). This reliance is misplaced. Summit Airlines involved another of Ganz's embezzlements of estate funds of another debtor. The trustee claimed that the law firm of Astor Weiss (the successor to PVHR) was liable for Ganz's actions, asserting a claim for turnover and sundry state law causes of action. The court had no trouble finding Astor Weiss liable for tortious conduct under state law. The court, however, did not address the issue of whether Astor Weiss was liable for turnover based on Ganz's actions under § 542(a). Therefore, Summit Airlines does not support Plaintiff-Appellee's claim that PVHR in this case is liable for turnover under § 542(a).

10

B.  <u>Arnold and Cutaiar Did Not Demonstrate Due Diligence in Protecting MTC's Assets as Owed in Their Capacity as Fiduciaries</u>

The question of whether Arnold and Cutaiar were reasonably diligent is an issue of fact and it is reviewed under the clearly erroneous standard.

Both the Third Circuit and Judge Fox found that Arnold and Cutaiar had a fiduciary duty to protect and maximize MTC's assets. <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d at 339; <u>In re Mushroom Transp. Co., Inc.</u>, 366 B.R. at 452-53. The Third Circuit, however, instructed that the question of whether a fiduciary exercised due diligence is a separate inquiry apart from the determination of whether a fiduciary breached his duty. <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d at 339, 343. In other words, a fiduciary may breach his duty, but still exercise due diligence with regard to protection of the estate's assets. To examine whether Arnold and Cutaiar exercised due diligence, it is necessary to rehearse some of the complicated procedural history of this case.

This adversary action, as discussed <u>supra</u>, was brought by MTC trustee Arnold (later replaced by Burtch) in 1992 against Ganz and numerous other defendants for the recovery of MTC funds improperly dispersed. Arnold also filed other adversary proceedings raising several claims to recover the funds stolen by

11

Ganz. Of these adversary actions, two are of particular importance: (1) the current proceeding, <u>Burtch v. Ganz [Pincus Verlin Hahn & Reich et al] (In Re: Mushroom Transportation Company, Inc.)</u>, Civ. No. 07-2759 ("Burtch") and (2) the proceeding against Security Pacific Bank Oregon (now Bank of America), <u>Burtch v. Security Pacific Bank Oregon</u>, Civ. No. 98-5244, 247 B.R. 395 (E.D. Pa. 2000) ("Security Pacific").

The Burtch case began in 1992 when Arnold filed suit against Ganz and others. Judge Fox of the Bankruptcy Court granted summary judgment to all defendants, finding that, as a matter of law, Arnold did not exercise due diligence and therefore did not toll the statute of limitations for breach of fiduciary duty by PVHR. This Court affirmed the Bankruptcy Court's decision. <u>In re Mushroom Transp. Co., Inc.</u>, 282 B.R. 805. On appeal, however, the Third Circuit reversed the grant of summary judgment for all defendants except Continental, and remanded the case back to Judge Fox for further proceedings consistent with the Third Circuit opinion.[4] See <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d at 343, 348. Specifically, the Third Circuit found that: (1) Arnold and Cutaiar did have a fiduciary

---

[4] In this opinion, the Third Circuit also affirmed the grant of summary judgment for Continental on the alternative ground that the Pennsylvania Uniform Fiduciaries Act immunizes Continental from the non-ERISA counts filed against them and affirmed the grant of summary judgment for Continental and PVHR on Arnold's breach of fiduciary duty claims under ERISA. 382 F.3d at 348.

12

duty to protect MTC's assets, but the question of whether they exercised due diligence to toll the statute of limitations was a separate analysis requiring further examination of the facts; and (2) there were facts that "create[d] genuine factual issues for the fact-finder concerning whether Arnold and Cutaiar exercised reasonable diligence in uncovering Ganz's embezzlement." Id. at 339-343.

In so holding, the Third Circuit found Judge Reed's analysis in Security Pacific persuasive. In that case, the court considered Arnold's suit against Security Pacific Bank Oregon (now Bank of America) to recover MTC funds that Ganz had misappropriated to pay his own personal debts. See Security Pacific, 247 B.R. 395. The Bankruptcy Court entered summary judgment for the defendants on grounds that, as a matter of law, Arnold did not exercise due diligence and therefore did not toll the statute of limitations. Judge Reed, reviewing the Bankruptcy Court's decision, found that summary judgment was inappropriate and remanded the case to the Bankruptcy Court. See In re Mushroom Transp. Co., Inc., 247 B.R. 395. Judge Reed noted that "the question of whether the plaintiff has exercised reasonable diligence is usually a jury question." Id. at 400 (internal quotations omitted). Judge Reed also found that there are some instances where a fiduciary may delegate duties to counsel in a bankruptcy proceeding and rely upon counsel to carry out those

13

duties, and that evidence from the record "could" convince a reasonable fact finder that Arnold did not abdicate his duties as MTC trustee. <u>Id.</u> at 400, 405. Importantly, Judge Reed determined that the Bankruptcy Code provides for and encourages liberal delegation of duties by trustees to professionals retained with the approval of the court, and that exactly "how much and what kind of delegation may take place" in order to "conclude that the delegation was unreasonable" is a question for the trier of fact. <u>Id.</u> at 403.

Both the Third Circuit's and Judge Reed's decisions found, from examination of the undeveloped record, that genuine issues of material fact existed with respect to the issue of due diligence - i.e. both found that a fact finder might determine that Arnold and Cutaiar exercised due diligence. Plaintiff-Appellant clings to these decisions as confirmation that Arnold and Cutaiar did in fact exercise due diligence, which would mandate a finding that the statute of limitations was tolled. This reliance, however, is misplaced. These two decisions did not hold that Arnold and Cutaiar were diligent fiduciaries. Rather, Judge Reed and the Third Circuit concluded that summary judgment was not appropriate because a reasonable fact finder "could" find that Arnold and Cutaiar exercised due diligence. <u>In re Mushroom Transp. Co., Inc.</u>, 247 B.R. at 405; <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d at 341.

14

On remand, Judge Fox in the Bankruptcy Court conducted a five day trial in which he heard testimony from several witnesses, examined over 100 exhibits, and reviewed pleadings and other court documents. In re Mushroom Transp. Co., Inc., 366 B.R. at 416-17. After trial, Judge Fox determined by a preponderance of the evidence that, as a matter of fact, Arnold and Cutaiar did not exercise reasonable diligence as debtors-in-possession of MTC's assets and therefore they were not entitled to a tolling of the statute of limitations. Id. at 435-36, 466-67.

Reasonable diligence is an objective standard and is defined as "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000) (citing Burnside v. Abbott Laboratories, 505 A.2d 973, 1988 (Pa. 1985)) (internal quotations omitted). A party need only exercise the "level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case." Id. at 611-12 (citing Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995)). However, this objective standard "is sufficiently flexible . . . to take into account differences between persons, their capacity to meet certain situations and the circumstances confronting them at the time in question." Cochran, 666 A.2d at

15

252.

In holding that Arnold and Cutaiar did not exercise reasonable diligence, Judge Fox recognized the fact that as debtors-in-possession, Arnold and Cutaiar were entitled to rely on Ganz as bankruptcy counsel and that Ganz betrayed his own fiduciary duty to MTC. Id. at 453. Judge Fox found, however, that: (1) Arnold and Cutaiar's lack of involvement in MTC's bankruptcy oversight and in Ganz's actions constituted an absence of diligence rather than justifiable reliance on the bankruptcy attorney; (2) the September 1987 court order approving cessation of operating reports did not make it harder for Arnold to discover Ganz's defalcations because reports had already ceased much earlier and the reports that were filed did not contain information regarding the escrow funds; (3) MTC's cases were not dormant for years, as claimed by Arnold; (4) the absence of a timely response from Ganz to Arnold's February 1988 letter, in contrast to his previous prompt responses, should have indicated to Arnold that something was amiss and Arnold failed to insist that Ganz provide a detailed report regarding MTC's assets; (5) Arnold did not investigate other actions[5] from Ganz that would

---

[5]   Judge Fox found these other actions to be:

"the absence of bank statements since October 1986; the fact that Ganz seemed to be acting without consultation with Arnold; that Ganz changed law firms in 1989 when the Pincus firm ceased to operate and yet still maintained control over Mushroom's assets, even though

16

have alerted a diligent fiduciary; and (6) Arnold, after being elected Chapter 7 trustee, did not seek control of estate property, which would have uncovered Ganz's embezzlement. Id. at 463-66. Judge Fox also considered that Arnold was an experienced Pennsylvania attorney with some background in bankruptcy law, including his time as Special Liquidation Consultant to MTC bankruptcy proceedings. These findings outweighed all of the factors that supported a determination of due diligence on Arnold and Cutaiar's part.

Here, this Court's standard of review is whether the facts found by Judge Fox are clearly erroneous. Plaintiff-Appellant wishes this Court to substitute the Court's judgment for that of Judge Fox's - without the benefit of a trial, hearing testimony, and only on the basis of the cold record. At trial,

---

> there was no court order releasing the Pincus firm as escrow agent; that there was no accounting for Mushroom's escrow account by the Pincus firm, as required by the Pennsylvania Rule of Professional Conduct 1.15 and 1.16, when the firm ceased operating; that the debtors would ultimately be filing tax returns, but necessary fiscal information, such as postpetition interest earned, was not being provided; that the substantive consolidation motion had been pending since 1986 without any request for court resolution; and that the amount of estate property represented as available for distribution in the April 1990 disclosure statement signed by Arnold, $1.6 million, was considerably larger than the rough amount Ganz claimed he orally told Arnold was available. None of these facts was investigated by Arnold."

In re Mushroom Transp. Co., Inc., 366 B.R. at 464.

17

the facts were exhaustively developed and examined thoroughly by Judge Fox. This Court will not substitute its judgment for Judge Fox's determination.

The Court has reviewed Judge Fox's findings of fact under the clearly erroneous standard and is not left with the definite and firm conviction that a mistake has been made. Therefore, the Bankruptcy Court's conclusion that Arnold and Cutaiar did not exercise due diligence as MTC's debtors-in-possession, and therefore are not entitled to the tolling of the statute of limitations, is affirmed.

C. The Statute of Limitations is Not Tolled Because There is no Finding of Due Diligence

The question of whether the statute of limitations has been tolled is a matter of law which is afforded plenary review. Judge Fox determined that Arnold and Cutaiar did not exercise due diligence in uncovering Ganz's defalcation and therefore the statute of limitations cannot be tolled under the discovery rule.

In Pennsylvania, once aware of an injury, a plaintiff has a duty to investigate the matter and institute a cause of action. Wilson v. El-Daief, 964 A.2d 354, 356 (Pa. 2009). The discovery rule tolls the statute of limitations until the injured individual knows or reasonably should know that (1) he has been injured and (2) that the injury was caused by a third party. Levenson v. Souser, 557 A.2d 1081, 1086-87 (Pa. Super. Ct. 1989).

The plaintiff has the burden of establishing the elements of the discovery rule. <u>Cochran</u>, 666 A.2d at 249. The discovery rule requires the plaintiff to show that he has exercised reasonable diligence in uncovering his injury. <u>Fine v. Checcio</u>, 870 A.2d 850, 858-859 (Pa. 2005).

Here, Plaintiff-Appellant wishes to apply the discovery rule to the claims for breach of contract and breach of fiduciary duty by PVHR. Plaintiff-Appellant argues that the "trigger point" in determining when Arnold knew of Ganz's defalcation occurred in 1992, when the United States Trustee informed Arnold of Ganz's misappropriations. Plaintiff-Appellant contends that with this "trigger point," because Arnold filed suit in late 1992, the statute of limitations had not expired. However, the Third Circuit indicated that both the Bankruptcy Court and District Court correctly found that the statute of limitations began for the common law tort and contract claims no later than August 1987, and began for the turnover claims no later than April 26, 1988. <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d at 338. Absent the application of any tolling principles, the statute of limitations on all of Arnold's claims had expired by the time he filed suit in October 1992.

Judge Fox found that, as a matter of fact, Arnold and Cutaiar did not exercise due diligence as debtors-in-possession. The legal conclusion that follows from this determination of fact

19

is that Plaintiff-Appellant's claims are barred by the statute of limitations because their actions did not rise to the level of reasonable diligence required to toll the statute of limitations. After plenary review of this legal conclusion, the Court affirms the Bankruptcy Court's conclusion.

IV. CONCLUSION

For the reasons stated above, the decision of the Bankruptcy Court is affirmed on all issues. An appropriate order follows.